UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUSSELL ROGERS,

    Plaintiff,

v.                                                            CASE NO: 8:07-cv-1705-T-26EAJ

GRADY JUDD, in his official capacity
as Sheriff for Polk County, Florida,
PATRICK RENNEY,
SANDRA BARRETT, and
RONALD ODOSKI,

    Defendants.
_____/

**O R D E R**

Before the Court is Defendants' Motion for Summary Judgment and various submissions (Dkt. 39), Plaintiff's Memorandum of Law and Response (Dkt. 42), and Plaintiff's Statement of Disputed Facts (Dkt. 43). After careful consideration of the submissions of the parties and the entire file, the Court concludes that the motion should be granted in part and denied in part.

**Pertinent Facts**

As is required in resolving a motion for summary judgment, the facts must be taken in the light most favorable to the non-moving party, Plaintiff, and the following facts are presented in that light. In this action for violation of a prisoner's civil rights

under 42 U.S.C. § 1983, Plaintiff, an inmate, sues the Polk County Sheriff's office and three detention deputies[1] for an alleged beating that took place on February 17, 2004, at the Polk County jail.[2] Earlier that day, Plaintiff had been involved in an altercation with a fourth detention deputy[3] that ended when yet another detention deputy, Suppinger, sprayed Plaintiff in the eyes with mace. Plaintiff was then handcuffed. At this point, Plaintiff was taken to the infirmary by the Defendants Odoski, Renney and Barrett.

The incident at issue occurred in the infirmary. Noble was also taken to the infirmary for treatment as a result of the altercation with Plaintiff. Present in the infirmary was also Melissa Ventura, mental health personnel who worked with the inmates. Nurse Michelle O'Neil evaluated Plaintiff during which time he remained in handcuffs. Odoski approached Plaintiff from behind and stated, "The inmate is the one

---

[1] The three detention deputies are Patrick Renney, Sandra Barrett, and Ronald Odoski.

[2] The Second Amended Complaint (Dkt. 19) contains twenty five counts. Count I seeks relief against Renney for Eighth Amendment violations for the use of excessive force and count II alleges the same against the Sheriff's office. Count III seeks relief against the Sheriff's office for assault committed by Renney, and count IV, against Renney for the assault. Count V alleges battery against the Sheriff's office for battery committed by Renney, and Count VI, against Renney for the battery. The next six counts, counts VII through XII, mirror the afore-mentioned claims for the actions of Barrett. Counts XIII through XVIII mirror the same six claims for the actions of Odoski. Count XIX alleges negligent conduct against the Sheriff's office in the hiring, training and supervising of the three detention deputies. Count XX alleges false imprisonment against Renney, and count XXI, false imprisonment against the Sheriff's office. Count XXII alleges false imprisonment against Barrett, and count XXIII, false imprisonment against the Sheriff's office. Count XXIV alleges false imprisonment against Odoski, and count XXV, false imprisonment against the Sheriff's office.

[3] The fourth detention deputy who is not named as a defendant is Noble.

suppose to go to the hospital." Odoski then grabbed Plaintiff's thumbs and bent them. Ventura overheard the detention deputies state that "if one of our guys are hurt then[4] or going to the hospital, you're going to be following in the ambulance."

Plaintiff closed his hand in response to Odoski's hold. Odoski then grabbed Plaintiff by the head and smashed his head several times into the concrete wall. Plaintiff's handcuffed arms were then raised in the air, causing severe pain, while his legs were being kicked by Renney. Barrett was watching a few feet away. Plaintiff was still standing at the time, and did not resist the actions of the officials. Ventura corroborates these events.

At this point, Nurse O'Neil came over and shut the curtain so that Ventura could not see the acts being inflicted on Plaintiff. Ventura heard Plaintiff tell the detention deputies that he was "going to sue them," and Odoski responded that no one would believe "a piece of shit inmate." While Odoski said this, he continued to smash Plaintiff's head into the concrete wall and hike up Plaintiff's handcuffs. At this point, Ventura pulled back the curtain and said, "Excuse me!" Nurse O'Neil then escorted Ventura and another inmate out of the infirmary. Before she left, Ventura overheard a detention deputy state that Plaintiff was going to follow Noble in an ambulance to the hospital.

---

[4] Noble was the detention deputy who was injured by Plaintiff and was being transported to Bartow Memorial Hospital.

From the infirmary, Odoski, Renney, and Barrett escorted Plaintiff to the isolation cell. Odoski held up his handcuffed arms, causing Plaintiff to walk in a crouched position. Upon reaching the isolation cell, Odoski and Renney threw Plaintiff face first onto the ground, kneed Plaintiff in the back, and began hitting him. Odoski held Plaintiff's head to the floor while Renney continued kneeing him. Plaintiff was then strip searched.

Plaintiff had no feeling in his right arm after the incident. Before the incident, he had no injuries. He received treatment to his face and arm after the incident by Dr. Enriquez. His right arm was placed in a sling, and he was referred to the hospital. His right arm from the elbow to the wrist was swollen and he could not move his right arm. Plaintiff wore the sling for one to two months and received pain medication for the arm. Plaintiff's left jaw condition was aggravated in the incident, and Plaintiff had jaw surgery some time thereafter.[5]

## Excessive Force

The test for excessive force in cases asserting Eighth Amendment violations is set forth in Hudson v. McMillan, 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1991), and Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). To determine whether excessive force was used, the inquiry must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

---

[5] Ventura reported the abuse after the incident, but she received a letter from internal affairs indicating that the investigation was unfounded. There never was an internal affairs investigation.

sadistically to cause harm." Hudson, 503 U.S. at 6. Several factors must be considered, such as 1) the extent of the inmate's injuries, 2) the need to apply force, 3) the relationship between the need and the amount of force applied, 4) the threat "reasonably perceived by the responsible officials," and 5) the efforts, if any, made to temper the forceful response. Whitley, 475 U.S. at 321.

Taking the Plaintiff's version of the facts as true, which is substantiated by one witness, Ms. Ventura, the Court cannot grant summary judgment for the officials. While the officers argue that only *de minimus* force was used, the Court finds that a genuine issue of fact exists regarding whether the force used was applied to maliciously or sadistically cause harm to Plaintiff. Moreover, Plaintiff's injuries include, at the very least, an injured and immobilized right arm. In the cases cited by Defendants,[6] the inmates were either creating a disturbance or refusing to follow the orders of the prison officials. In this case, the evidence taken in the light most favorable to Plaintiff shows that he was handcuffed, waiting in the infirmary for a protective action evaluation.

---

[6] See, e.g., McBride v. Rivers, 170 Fed.Appx. 648 (11th Cir. 2006) (holding that officials did not use excessive force because they knew that plaintiff was being transferred due to serious disciplinary infraction, plaintiff admitted that the officials did not threaten him or use abusive language toward him, and plaintiff suffered no serious injury, nor was he stunned); Bennett v. Parker, 898 F.2d 1530 (11th Cir. 1990) (holding that plaintiff created a disturbance and therefore use of force was necessary to restore order, and no evidence of any injury existed); Brown v. Smith, 813 F.2d 1187 (11th Cir. 1987) (holding that because plaintiff refused to enter his cell when ordered, use of force was reasonable, and no evidence of any injury existed).

## Qualified Immunity

In cases alleging violations of § 1983, after establishing that the public official is acting in his or her discretionary authority, the burden shifts to the plaintiff to establish first that the defendant's conduct has violated a constitutional right. McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). The violation must be analyzed by viewing the facts in the light most favorable to the plaintiff. Id. Next, the plaintiff must show that the violation was "clearly established" at the time of the violation by a decision of the United States Supreme Court, the Eleventh Circuit Court of Appeals or the Supreme Court of Florida. McClish, 483 F.3d at 1237 (citing Saucier and Marsh v. Butler County, 268 F.3d 1014, 1032 n. 10 (11th Cir. 2001) (en banc)). This analysis must be conducted in the proper order and a court may not assume, for argument's sake, that a constitutional right was violated. See Galvez v. Bruce, No. 08-10531, 2008 WL 5246102, at * 3 (11th Cir. Dec. 18, 2008) (noting that Supreme Court in Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007) has instructed courts not to proceed to third step of whether law was clearly established at time of violation unless they first find a violation occurred under plaintiff's set of facts); McClish, 483 F.3d at 1238.

Galvez, unlike this case, involved an asserted violation of Fourth Amendment rights in the conduct of an arrest for excessive force that occurred after the arrestee was

completely secured, i.e., handcuffed.[7] This case involves a prison inmate's asserted violation of Eighth Amendment rights. In this Circuit, "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in Hudson and Whitley." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002) (citing Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002)). Thus, if the plaintiff sufficiently alleges an Eighth Amendment violation, the inquiry with respect to qualified immunity ends. Skrtich, 280 F.3d at 1301.[8]

---

[7] In Galvez, the Court cited Slicker v. Jackson, 215 F.3d 1225 (11th Cir. 2000), and Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002), as the clearly established law that officers must not subject arrestees to "significant force" after the arrestee is fully secured. Galvez, 2008 WL 5246102, at *5. Other recent cases involving Fourth Amendment violations to secured arrestees include: Buckley v. Haddock, 292 Fed.Appx. 791 (11th Cir. 2008) (reversing Fourth Amendment excessive force claim brought by handcuffed arrestee, holding not excessive force because of difficulty involved in securing arrestee, and distinguishing Hadley v. Guiterrez, 526 F.3d 1324 (11th Cir. 2008)); Hadley v. Guiterrez, 526 F.3d 1321 (11th Cir. 2008) (holding that Fourth Amendment excessive force claim did not entitle officer who punched arrestee in stomach to qualified immunity because Hadley did not resist arrest nor pose danger); Zivojinovich v. Barner, 525 F.3d 1059 (11th Cir. 2008) (holding in Fourth Amendment excessive force claim, use of taser gun after arrestee was handcuffed constituted reasonable force after difficult arrest); McCall v. Crosthwait, No. 2:07-cv-870-WKW, 2008 WL 5351735 (M.D. Ala. Dec. 23, 2008) (holding that force used by officer was *de minimus* only against handcuffed arrestee and did not violate Fourth Amendment right to be free from excessive force); and Hawkins v. Dekalb County, Ga., No. 1:08-cv-2118-TWT, 2008 WL 5000036 (N.D. Ga. Nov. 18, 2008) (finding that officer was not entitled to dismissal of Fourth Amendment excessive force claim based on qualified immunity because force used to hit arrestee in back of head with firearm was unreasonable).

[8] Some recent district court cases analyzing Eight Amendment excessive force claims include: Spikes v. Butts, No. 5:08-cv-131(HL), 2008 WL 5381966 (M.D. Ga. Dec.

Prison officials carry out their discretionary duties by moving prisoners to the infirmary, as in this case. A prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated if the inmate is gratuitously beaten while in handcuffs, as in this case. In the prison setting, the law was clearly established by 1998 that prison officials may not employ "gratuitous force against a prisoner who has been already subdued" or incapacitated. Skrtich, 280 F.3d at 1303 (citing Harris v. Chapman, 97 F.3d 499, 505-506 (11th Cir. 1996) and other cases). Taking the Plaintiff's submissions in the light most favorable to him, at the very least, a genuine issue of material fact exists with respect to whether the officials slammed Plaintiff's face into the wall while he was handcuffed, and whether the officials kneed Plaintiff, who was handcuffed and face down on the floor at the time, in the back and hit him while lifting his arms. After the incident, Plaintiff wore a sling for his right arm which was left numb, and his face was scraped

---

23, 2008) (finding that inmate stated claim for Eighth Amendment excessive force by alleging that one prison official punched inmate in the face, splitting his upper and lower lips, and a second prison official slammed handcuffed inmate into the floor face first, and disallowing qualified immunity); Thompson v. Carani, No. CV 106-099, 2008 WL 5088541 (S.D. Ga. Dec. 2, 2008) (finding that inmate's statements prevented him from meeting excessive force claim because he admitted he refused to follow prison official's orders when he was sprayed with pepper spray); Adams v. Mosley, No. 2:06-cv-873-ID, 2008 WL 5101985 (M.D. Fla. Dec. 1, 2008) (finding that official not entitled to qualified immunity on summary judgment when he grabbed handcuffed inmate, unprovoked, and slammed him to the floor on his back); and Leland v. Vought, No. 4:07-cv-20-RH/WCS, 2008 WL 4525113 (N.D. Fla. Sept. 30, 2008) (denying summary judgment for official where prisoner escorted to infirmary was punched in the back of the head "full force" while he was handcuffed because punch could "only have been for the purpose of maliciously causing punishment and pain.").

from the wall.  Whether the injury to his jaw was a direct result of the actions of the officials or whether the jaw injury was pre-existing is a genuine issue of fact.

## § 1983 Claim Against Sheriff

The Court finds that summary judgment must be granted for Defendants on the constitutional claim against the Sheriff.  The count against the Sheriff based on the above-referenced incident does not assert any official custom or policy that resulted in the asserted Eighth Amendment violations.  See Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978).  Plaintiff has not presented any submissions regarding a policy or custom that culminated in the actions taken against him.

## State Law Claims

The Court finds that the claims for assault and battery may proceed to trial based on the plaintiff's version of the facts set forth above.  As to false imprisonment, however, summary judgment is granted on all counts as to all Defendants.  Plaintiff has cited no authority to substantiate a claim for false imprisonment under the circumstances of this case involving a lawfully convicted prisoner.  Moreover, there is no legal authority requiring that the detention deputies unhandcuff Plaintiff while in custody.

As to the remaining claim against the Sheriff for negligent conduct in the hiring, training and supervising of the detention deputies, this count may proceed.  The Sheriff's expert opines in his affidavit that the training and disciplinary procedures for its staff is adequate, while Plaintiff's expert is critical of the Sheriff's office and how it conducts

staff evaluations. Plaintiff's submissions regarding the track record of Odoski and Barrett weigh on the side of allowing the evidence to be further developed at trial. In Gold v. City of Miami, 151 F.3d 1346, 1352 (11th Cir. 1998), cited by Defendants, the plaintiff's affidavit contained only conclusory allegations regarding the city's need to better train and supervise its staff. Based on the competing affidavits of Plaintiff's expert and Defendants' expert, the Court finds that the negligence count should proceed.

It is **ORDERED AND ADJUDGED** as follows:

(1) Defendant's Motion for Summary Judgment (Dkt. 39) is granted in part and denied in part.

(2) Summary Judgment in favor of Defendants is granted as to counts II, VIII, and XIV (§ 1983 claims against Sheriff), and as to counts XX, XXI, XXII, and XXIII, XXIV, and XXV (all false imprisonment claims). Summary judgment is denied as to the remaining counts.

**DONE AND ORDERED** at Tampa, Florida, on January 20, 2009.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record